UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY L. HOLLOWAY,

        Petitioner,                      Civil No. 05-CV-10276
                                            Honorable David M. Lawson

v.

JAN TROMBLY,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

      The petitioner, Jeffrey L. Holloway, presently confined at the Richard A. Handlon Correctional Facility in Ionia, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, the petitioner challenges his convictions for one count of assault with intent to commit murder, Mich. Comp. Laws § 750.83, one count of being a felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and a count of possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b, contending that the Michigan Court of Appeals improperly denied his motion to remand to the trial court so he could present newly discovered evidence, the prosecutor engaged in misconduct, and his credit against his custody sentence for time served while awaiting trial was calculated erroneously. The respondent has filed an answer to the petition. The Court finds that the petitioner's claims lack merit and therefore will deny the petition.

I.

      The convictions stem from the shooting of the petitioner's acquaintance, fifteen-year-old Earl Barbee, during the early morning hours of April 3, 2002. Barbee was shot six times while walking

on the 1000 block of Sherman Street in Grand Rapids. The Michigan Court of Appeals summarized the testimony presented at trial as follows:

> Barbee testified at trial that on the morning in question he was walking alone in the area of Sherman and Neland Streets when he was approached by Chris Johnson, an acquaintance from the neighborhood. Barbee testified that, after he talked to Chris, defendant pulled up in a silver car, got out from the passenger side, walked toward Barbee, and called Barbee by name. The two started talking. Defendant asked whether Barbee had some dope, and Barbee told him no. Barbee testified that he used to go with defendant's sister in elementary school, and that is how he knew defendant. Barbee testified that after he turned and walked away from defendant, the shooting started. Barbee testified that he ran when he heard shots and after several were fired he turned back and saw defendant standing there with a handgun in his hand. After being shot, Barbee ran and eventually knocked on the door of a woman who called 911. The police found Barbee lying on the woman's front porch, bleeding from the mouth and chest, and missing teeth. Officer Gard testified that Barbee was not able at the time to speak clearly, that he repeatedly asked Barbee for a description of the suspect, and that Barbee did not name the shooter. The police found ten .380 shell casings, seven stamped "RP" and three stamped "Win," but were unable to determine whether all were shot from the same weapon. Barbee was hospitalized for three weeks and underwent multiple surgeries. On April 4, 2002, while in the hospital, Barbee identified defendant in a photographic show up and, although tubes in his mouth prevented him from talking, Barbee wrote or nodded his head, giving the shooter's name as Jeff, Jeff's physical description, and also relaying that two people were involved.
>
> Defendant's theory of the case was that he was at home at the time of the shooting, with his mother, and a friend, Dirlean Jones. Dirlean Jones testified that she spent the night at defendant's house, where he lived with his mother, at 333 Highland Street. Jones testified that defendant and defendant's mother, Theresa, were at home all evening, and that the three played cards from 10 p.m. until defendant's mother went to bed around 1:30 or 2:00 a.m. Jones testified that she spent the entire night on the couch in the living room, and that at around 3:00 a.m. Brian Bobo came over to talk to defendant. Jones testified that defendant could not have left the house without her seeing it and that the alarm would have beeped if the door was opened.
>
> Brian Bobo and Chris Johnson were subpoenaed to testify at trial but did not appear.
>
> Defendant testified that Earl Barbee used to be a friend of his sister's and that he last saw Barbee four or five years before the incident in question, when Barbee was around ten years old. Defendant testified that he knew Chris Johnson from school. He testified he had no reason to harm either Barbee or Johnson. Defendant testified that he was at home at the time of the shooting, that Dirlean Jones was at his house,

>and that when Brian Bobo came over the two went to defendant's bedroom and played dice. Defendant testified that he was not in the area of Sherman and Neland, was not in a silver car, and did not shoot Earl Barbee.
>
>On cross-examination, defendant testified that when he was arrested, he did not tell the police about Dirlean Jones or Brian Bobo, and said only that his mother could confirm he was at home on the evening in question.
>
>Detective Smith testified as a rebuttal witness that when he interviewed Dirlean Jones, she did not give him specific times during the evening in question, she told him she last saw defendant when he went to his room around 1:00 a.m., and that she did not remember when Bobo left the house. Smith testified that Dirlean told him she did not know if defendant left the house that night.

*People v. Holloway*, No. 245844, 2004 WL 895927, at *1-2 (Mich. Ct. App. Apr. 27, 2004).

The jury found the petitioner guilty of the crimes noted above, and on December 3, 2002 he was sentenced as a third habitual offender to twenty-five to fifty years' imprisonment for the assault-with-intent-to-murder conviction, to be served consecutively to a five-to-ten-year sentence for the felon-in-possession conviction and a two-year term for the felony-firearm conviction. The petitioner was on parole when he committed these crimes, and so his sentences were to run consecutively with yet another custody term of one-and-a-half to twenty years for a previous conviction of possession with intent to deliver cocaine.

The petitioner filed a direct appeal in the Michigan Court of Appeals, arguing that: (1) the case should be remanded to the trial court to allow him to move for a new trial based upon newly discovered evidence; (2) the prosecutor violated his due process rights by intentionally eliciting testimony that key prosecution witnesses have been threatened or bribed; and (3) the petitioner was not awarded sentencing credit for eight months served prior to his sentences for crimes committed while on parole. The Michigan Court of Appeals affirmed the petitioner's convictions. *People v. Holloway*, No. 245844, 2004 WL 895927 (Mich. Ct. App. Apr. 27, 2004).

The petitioner then filed an application for leave to appeal in the Michigan Supreme Court, presenting the same claims he made to the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal on November 22, 2004. *People v. Holloway,* 471 Mich. 921, 688 N.W.2d 829 (2004) (table).

The petitioner filed a timely petition for a writ of habeas corpus and raises the following claims in this Court:

> I. The petitioner was denied his federal constitutional right to a hearing in state court on the ground that his constitutional rights were violated;
>
> II. The prosecutor violated the petitioner's due process rights by intentionally eliciting testimony that key prosecution witnesses have been threatened and bribed;
>
> III. The petitioner was denied due process by receiving no credit for time served in jail prior to his sentence for crimes committed on parole.

The respondent has filed an answer to the petition arguing that the petitioner's claims lack merit and that his second claim is procedurally defaulted.

I.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

>   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law.  *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998).  Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000)) (internal quotes omitted).  Additionally, this Court must presume the correctness of state court factual determinations.  28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

   The Supreme Court has explained the proper application of the "contrary to" clause as follows:

>   A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
>   A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .
>
> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409-11; *see also Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Harbison v. Bell*, 408 F.3d 823, 828-29 (6th Cir. 2005); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

A.

In his direct appeal to the Michigan Court of Appeals, the petitioner moved to remand his case, supporting the motion with affidavits that, he contended, amounted to newly discovered evidence. It was his intention to move the trial court for a new trial on the basis of that evidence if the remand were successful. The state appellate court denied the motion, and the petitioner now contends that the denial of that motion abridged his constitutional right to due process.

The petitioner presented three affidavits that, in his view, establish his actual innocence. The first affidavit is from Michael Bowlson. Bowlson, who was a prisoner at Camp Manistique in

Manistique, Michigan when he executed his affidavit, stated that "back around the beginning of April 2002," while he was walking down Franklin Street, a man he knew as "J.B." pulled up beside him and said, "I think I just killed some dude on Sherman and Neland do you know who got some weed for sale?"

The second affidavit is from Brian Bobo, and bears a notarization date of July 10, 2003. In his affidavit, Bobo stated that on April 2, 2002, he and the petitioner spent time at his grandmother's home and the petitioner's mother's home. Bobo states that at one point the petitioner went to his mother's home to sleep. Bobo returned later to ask the petitioner if he wanted to go out. The petitioner said no, so Bobo left. After going to a bar, Bobo returned to the petitioner's home and the two visited for a while and played dice. The two men played dice for about an hour and a half, after which Bobo left.

The petitioner also submitted an affidavit from Tony Otto, the manager of a Colortyme store. Otto's statement was intended to bolster the testimony of Dirlean Jones, who had provided alibi testimony for the defense at trial. Jones testified during trial that she spent the night at the petitioner's home on April 2, 2002. She testified that she remembered the date because she had received a delivery from Colortyme on that day. Otto's statement confirms that he and another employee delivered a bedroom set to Jones's home on April 2, 2002.

The Michigan Court of Appeals considered each of these affidavits when deciding whether to remand the case to the trial court for an evidentiary hearing on newly discovered evidence. The court of appeals found that Bowlson's affidavit lacked indicia of trustworthiness and materiality required for a showing that its production may have altered the outcome of a new trial. *Holloway*, 2004 WL 895927, at *4. The state court also found Bobo's affidavit unpersuasive. Although

Bobo's affidavit detailed his numerous contacts with the petitioner on April 2, 2002, it did little to pinpoint the petitioner's whereabouts at the time of the shooting. He described his contacts with the petitioner with little specificity as to time. Finally, the state court found the Colortyme manager's statement to be of little persuasive value; the statement confirmed delivery of Jones's furniture on April 2, but it did not cast any light on the petitioner's location at the time of the shooting.

The denial of a post-conviction remand by a state appellate court does not translate well into a ground for federal habeas relief. It is questionable whether the petitioner has a federal constitutional right to a hearing in state court under such circumstances. *See Norris v. Schotten*, 146 F.3d 314, 336 (6th Cir. 1998). The point of the argument is that evidence that cropped up after trial demonstrates the petitioner's innocence, so the State should have to re-engage the trial process and again attempt to prove the petitioner guilty to a new jury. The Supreme Court has held, however, that such "free-standing" claims of innocence will not support relief under 28 U.S.C. § 2254. *See Herrera v. Collins*, 506 U.S. 390, 399 (1993).

In *Cress v. Palmer*, 484 F.3d 844 (6th Cir. 2007), the court of appeals summarized the state of the law, which does not recognize a free-standing claim of innocence as the basis of granting a writ of habeas corpus. Since the decision governs the present case, it is quoted at length here:

> The easiest claim to analyze is the petitioner's challenge to the validity of the state court's conduct of his post-conviction litigation, with respect to the denial of the opportunity to present recantation evidence. As the district court noted, the Sixth Circuit has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review. *See Kirby v. Dutton*, 794 F.2d 245, 246-47 (6th Cir. 1986); *Roe v. Baker*, 316 F.3d 557, 571 (6th Cir. 2002). We have clearly held that claims challenging state collateral post-conviction proceedings "cannot be brought under the federal habeas corpus provision, 28 U.S.C. § 2254, "because 'the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody.'" *Kirby*, 794 F.2d at 246 (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)); *see also Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987) ("States have no

obligation to provide this avenue of relief, and when they do, the fundamental fairness mandated by the Due Process Clause does not require that the State supply a lawyer as well." (citation omitted)).

. . .

[C]ase law from this circuit supports the conclusion that Cress's third claim is, likewise, not cognizable. Cress contends that, given "overwhelming" proof of his innocence, his continued incarceration violates his due process rights, an argument that has been characterized as a free-standing innocence claim when not coupled with allegations of constitutional error at trial. *See Schlup v. Delo*, 513 U.S. 298, 314-17 (1995) (explaining the difference between a procedural innocence claim, which can permit a petitioner to transcend procedural obstacles that would otherwise preclude review of underlying constitutional claims, and a substantive innocence claim, which is "'itself a constitutional claim'" (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993))). In the wake of *Schlup*, we have repeatedly indicated that such claims are not cognizable on habeas. *See, e.g., Zuern v. Tate*, 336 F.3d 478, 482 n.1 (6th Cir. 2003) ("The Supreme Court has held that newly discovered evidence does not constitute a freestanding ground for federal habeas relief but, rather, that the newly discovered evidence can only be reviewed as it relates to an 'independent constitutional violation occurring in the underlying state criminal proceeding'" (quoting *Herrera*, 506 U.S. at 400); *Staley v. Jones*, 239 F.3d 769, 780 n.12 (6th Cir. 2001) (federal habeas jurisdiction "require[s] a claim of legal error in the original proceedings"). *But see House v. Bell*, 311 F.3d 767, 768 (6th Cir. 2002) ( en banc), *opinion after certified question denied*, 386 F.3d 668 (6th Cir. 2004), *rev'd and remanded,* 547 U.S. 518 (2006) (noting that "[t]he Supreme Court has assumed that 'in a capital case a truly persuasive demonstration of "actual innocence" made after trial would render the execution of a defendant unconstitutional, and warrant habeas relief *if there were no state avenue open to process such a claim*'" and therefore certifying questions to state court "in order to ascertain whether there remains a 'state avenue open to process [petitioner's freestanding innocence] claim'" (quoting *Schlup*, 513 U.S. at 314 n. 28, quoting *Herrera*, 506 U.S. at 417) (O'Connor, J., concurring))) (emphasis added in *House*).

The Supreme Court considered a free-standing innocence claim in *Herrera*. . . . The Court reviewed its habeas jurisprudence and observed: "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Id.* at 400. Although the Court noted that it had not previously held that a free-standing innocence claim was cognizable on habeas, it would . . . assume, for the sake of argument in deciding [Herrera's] case, that in a capital case a truly persuasive demonstration of "actual innocence" made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim. But because of the very disruptive effect that entertaining claims of actual innocence would have on the need for finality in capital cases, and the enormous burden that

having to retry cases based on often stale evidence would place on the States, the threshold showing for such an assumed right would necessarily be extraordinarily high.

*Cress,* 484 F.3d at 853-855.

The petitioner's legal claim here is virtually indistinguishable from that in *Cress*. The petitioner offers evidence that was not presented at trial and tends to support the alibi defense presented at trial. However, although the evidence certainly would have been relevant and may have caused the jury to take a different look at the facts, the failure of the state court to grant a post-conviction motion for remand so a new trial motion could be filed is not a claim that raises a constitutional issue upon which a habeas writ might rest. The petitioner's claim of denial of his remand motion based on newly discovered evidence does not state a claim upon which habeas relief can be granted.

B.

In his second claim for habeas corpus relief, the petitioner argues that the prosecutor committed misconduct by intentionally eliciting testimony that prosecution witnesses were threatened and bribed where such threats and bribes were not shown to be connected to the petitioner. The respondent argues that review of this claim is barred because the petitioner did not object at trial, and the state court of appeals reviewed this claim for plain error only.

The Supreme Court has described doctrine of procedural default as follows:

In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Although the procedural default doctrine precludes habeas relief on a defaulted claim absent satisfaction of the cause-and-prejudice test, the doctrine is not jurisdictional. *See Trest v. Cain*, 522 U.S. 87, 89 (1997); *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005). Although the Court would ordinarily resolve the procedural default issue first, "judicial economy sometimes dictates reaching the merits [of a claim] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) (internal citations omitted); *see also Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997); *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) ("[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits."). In this case, it is more efficient to proceed directly to the merits of the petitioner's claims.

The witnesses that are the focus of this claim are Earl Barbee and Chris Johnson. Barbee said at trial that he was worried and scared and did not want to testify. He explained that on the morning of the preliminary examination, an unknown gunman appeared on his porch, although he did not know if the gunman was connected to the petitioner. However, despite this apparent intimidation, Barbee testified at the preliminary examination. Chris Johnson did not honor his trial subpoena, so his preliminary examination testimony was admitted at trial. In that transcript, Johnson said that he was nervous about testifying. He refused to explain why, but when threatened with contempt, Johnson testified that a woman who identified herself as the petitioner's mother offered him $1,000. It is not clear from the record if this bribe was to stay away from court or to alter his testimony, but Johnson said that he did not accept the money.

In its harmless error review, the state court of appeals concluded as follows:

-11-

> The prosecution maintains that Barbee's and Johnson's testimony was not offered to prove knowledge of defendant's guilt, but rather, was relevant to these witnesses' credibility and to explain their resistance to testifying. The prosecution argues that this evidence was more probative than prejudicial given that neither incident was tied or attributed to defendant . . . .
>
> We conclude that even if admission of this evidence was plain error because the prosecution presented no evidence linking the threats to defendant, reversal is not warranted because the error did not affect the outcome of the proceedings given the weakness of defendant's alibi defense and the strength of the proofs against defendant.

*Holloway*, 2004 WL 895927, at *4.

Errors based on state evidence law concerning the admission or exclusion of certain evidence will not support the issuance of the writ unless those errors rendered the trial fundamentally unfair. *See Clemmons v. Sowders*, 34 F.3d 352, 357 (6th Cir. 1994) (holding that "[h]abeas review does not encompass state court rulings on the admission of evidence unless there is a constitutional violation"). The Court of Appeals for the Sixth Circuit has explained that

> "[e]rrors in the application of state law, especially rulings regarding the admission or exclusion of evidence, are usually not to be questioned in a federal habeas corpus proceeding." *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988). Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they "offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996) (quoting *Patterson v. New York*, 432 U.S. 197, 202 (1977)); *see also Spencer v. Texas*, 385 U.S. 554, 563-64 (1967).

*Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (second alteration in original).

Like the state court of appeals, this Court finds that even if the evidence of Barbee's threat and Johnson's attempted bribe was erroneously admitted, the error did not render the trial fundamentally unfair. If evidence of threats or bribes are connected to the defendant, such evidence becomes relevant to establish consciousness of guilt. *See United States v. Blackwell*, 459 F.3d 739, 768 (6th Cir. 2006) (noting that "spoliation evidence, including evidence that defendant attempted

-12-

to bribe and threaten[] a witness, is admissible to show consciousness of guilt. . . . Furthermore, a district court is permitted to allow evidence of threats to a witness to be admitted even if the district court is not certain that such threats occurred") (citations omitted); *United States v. Mendez-Ortiz*, 810 F.2d 76, 79 (6th Cir. 1986) (holding that "[t]hough not listed in Rule 404(b), spoliation evidence, including evidence that defendant attempted to bribe and threatened a witness, is admissible to show consciousness of guilt. . . . The fact that defendant attempted to bribe and threaten an adverse witness indicates 'his consciousness that his case is a weak or unfounded one; and from that consciousness may be inferred the fact itself of the cause's lack of truth and merit'") (quoting II Wigmore, Evidence § 278 (Chadbourn Rev. 1979)). That arguably was the case with respect to witness Johnson. There apparently was never any effort by the State to connect the threat to Barbee to the petitioner, and that evidence likely was irrelevant. But if there was no connection to the petitioner, there is little likelihood that the jury used the evidence against the petitioner. Admission of that evidence, therefore, would not render the state trial fundamentally unfair. Habeas relief is not warranted on this claim.

C.

Finally, the petitioner argues that he was denied due process and equal protection of the law when the trial court failed to give him sentencing credit for eight months he served in jail before his sentence for the crimes he committed while on parole. The petitioner argues that those eight months were served for the instant offense rather than for any violation of parole. The state court of appeals addressed that issue and concluded that parolees who commit crimes while on parole must suffer a consecutive sentence for the new crime, and time spent in custody awaiting trial on the new crime is attributable to the parole violation, not the new sentence. *Holloway*, 2004 WL 895927, at *5.

It is well-settled that errors on matters of interpretation of state sentencing law are not cognizable on habeas review. *See, e.g., Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) ("federal courts can not review a state's alleged failure to adhere to its own sentencing procedures."). Under Michigan statutory law, "[i]f a person is convicted and sentenced to a term of imprisonment for a felony committed while the person was on parole from a sentence for a previous offense, the term of imprisonment imposed for the later offense shall begin to run at the expiration of the remaining portion of the term of imprisonment imposed for the previous offense." Mich. Comp. Laws § 768.7a(2). The state court interpreted this statute to require the allocation of the time the petitioner spent in jail awaiting trial on the present charges to the parole violation consequences on the old charge. Once again, this makes sense under Michigan statutory law. *See* Mich. Comp. Laws § 791.238(2) ("A prisoner violating the provision of his or her parole . . . is liable, when arrested to serve out the unexpired portion of his or her maximum imprisonment."). Finally, under Michigan law, when a parolee is arrested for a new criminal offense, he is held on a parole detainer until he is convicted of that offense, and "[t]he time from the date of the declared violation to the date of the prisoner's availability for return to an institution shall not be counted as time served" against the new sentence. Mich. Comp. Laws § 791.238(2); *People v. Stewart*, 203 Mich. App. 432, 433, 513 N.W.2d 147, 147 (1994). State law requires that such time be applied to the old sentence instead. *See People v. Brown*, 186 Mich. App. 350, 359, 463 N.W.2d 491, 496 (1990) ("The record reveals that the trial court correctly held that credit for time spent in jail prior to defendant's retail-fraud sentencing was to be applied against the remaining portion of defendant's sentence for the paroled offense, rather than his sentence for retail fraud.").

It appears, therefore, that state law was applied accurately in computing the petitioner's sentence in this case. However, the petitioner alleges that such interpretation violates the *federal* Constitution because it calls for treating parolees differently than other pretrial detainees, who would be entitled to credit for time served while awaiting trial, and therefore prisoners in that class are denied the equal protection of the laws. This argument must fail. The Equal Protection Clause provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. 14, § 2. The Supreme Court has described the protection afforded by the Clause as "'essentially a direction that all persons similarly situated should be treated alike.'" *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). As a general rule, laws enacted by state legislatures enjoy a presumption of validity. *Id.* at 440. Courts reviewing those laws will uphold them as long as "the classification drawn by the statute is rationally related to a legitimate state interest." *Ibid.*

Certainly, the State has an interest in enforcing its criminal laws in a way that protects its citizens from recidivists. Sentencing laws that prescribe consecutive sentences on parolees who commit new crimes while on parole are rationally related to that objective. And detaining parolees on parole holds while the new crimes are adjudicated is a rational choice as well. According to *People v. Brown*, that time is allocated to the old sentence, and the petitioner here has not alleged that his "dead time" was never credited to his old sentence. In all events, because the state sentencing statutes are rationally related to a legitimate governmental purpose, no violation of the Equal Protection Clause results from the sentencing scheme challenged by the petitioner.

III.

The petitioner has not established that he is in state custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus [dkt #1] is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   February 3, 2009

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 3, 2009.

s/Felicia M. Moses
FELICIA M. MOSES

---